**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

STEVEN A. FEGEL, :

                Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant. :

Case No. 3:08-cv-061

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

---

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed a application for SSD in October, 2000, which was denied at the initial level and Plaintiff took no further appeal. (Tr. 34; 37-40).

Plaintiff filed a second application for SSD and an application for SSI on October 21, 2003, alleging disability from August 3, 2002, due to a back impairment and arthritis. (Tr. 63-66; 532-34; 78-87). Plaintiff's applications were denied initially and on reconsideration. (Tr. 41-44; 47-49; 536-39, 541-44). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 554-97), who determined that Plaintiff is not disabled. (Tr. 16-28). The Appeals Council denied Plaintiff's request for review, (Tr. 6-9), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe coronary artery disease with residuals of triple coronary bypass surgery, non-ischemic cardiomyopathy, a history of alcohol abuse and prescription narcotic medication abuse and/or dependence, and a left shoulder adhesive capsulitis improved with physical therapy, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 22, ¶ 3; Tr. 24, ¶ 4). Judge Padilla then found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 24, ¶ 5). Judge Padilla then used sections 202.17 through 202.19 (before attaining age 50) and sections 202.10 through 202.12 (after attaining age 50) of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and determined that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 27, ¶¶ 9, 10). Judge Padilla concluded that Plaintiff is not disabled and therefore

4

not entitled to benefits under the Act. (Tr. 28).

Plaintiff sought emergency room treatment for complaints of hip and/or back pain on June 19, 2002, (Tr. 259-66), and June 23, 2002, (Tr. 267-78), for a sore throat on February 14, 2003, (Tr. 286-93), for tooth pain on March 30, 2004, (Tr. 311-16), on December 3, 2004, for non-cardiac chest pain, (Tr. 468-74), and on March 31, 2005, for a laceration to his finger. (Tr. 475-83).

Plaintiff received general medical treatment at the Miami Valley Hospital facility during the period June 27, 2002, through March 1, 2004. (Tr. 208-21; 209-10). Plaintiff first saw Dr. See of the Miami Valley Hospital on July 28, 2002, at which time Dr. See noted that Plaintiff reported a 10-year history of back pain and that physical therapy was helpful. (Tr. 173-75). Dr. See also noted that Plaintiff had a fairly good range of back motion, some tenderness in the L4-5 region, complained of some back pain on straight leg raising, and that his neurological examination was negative. *Id.*

Plaintiff sought emergency room treatment on October 1, 2003, after experiencing left-sided weakness. (Tr. 177-97). Plaintiff's diagnoses were identified as transient ischemic attack, resolving, diabetes mellitus II, and hypertension. *Id.* Subsequently, Plaintiff participated in occupational therapy for the purpose of improving his left-sided weakness. (Tr. 294-308). At the completion of that therapy, it was noted that all of Plaintiff's goals were met. *Id.*

Examining physician Dr. Danopulos reported on December 17, 2003, that Plaintiff had normal heart tones, full ranges of motion of his upper and lower extremities, painful but normal motions of his hips, a slightly limping gait, and that his spine was painless to pressure. (Tr. 198-207). Dr. Danopulos also reported that Plaintiff had positive normal straight leg raisings, no evidence of nerve root compression or peripheral neuropathy, exaggerated reflexes on the left of the

5

upper and lower extremities but an otherwise normal neurological exam, and that he showed some mild sequela from the stroke he had two months prior. *Id.* Dr. Danopulos noted that the objective findings were early lumbar spine arthritis, right hip early arthritis, mature onset non-insulin dependent and well-controlled diabetes, well-controlled hypertension, and mild sequela of the recent stroke. *Id.* Dr. Danopulos opined that Plaintiff's abilities to do work-related activities were mainly affected and restricted by his lumbar spine condition with chronic pain which affected his abilities to stand, walk, lift, and carry, and that he was not able to carry more than 15 pounds with his left hand. *Id.* X-rays performed in conjunction with Dr. Danopulos' exam revealed mild disc narrowing and retrolisthesis of L4 and L5 and spurring throughout Plaintiff's lumbar spine and minimal cystic changes in the left acetabular root of Plaintiff's right hip. *Id.*

Plaintiff sought emergency room treatment on April 23, 2004, after experiencing left sided weakness and slurred speech the previous day. (Tr. 228-51). At the time of his admission, it was noted that Plaintiff exhibited some left-sided weakness and decreased sensation on the left. *Id.* The emergency room physician recommended that Plaintiff be admitted to the hospital for additional treatment and monitoring, but Plaintiff "adamantly refused admission" and Plaintiff left the hospital against medical advice. *Id.*

The record contains Plaintiff's voluminous records from the Cassano Health Center where he has received treatment from Drs. Williams, Schoen, and Weber for various medical complaints and conditions since at least April 26, 2004, through at least March 14, 2006. (Tr. 252-57; 352-63; 376; 418; 425-65; 520-30).

On September 13, 2004, Dr. Williams reported that Plaintiff's diagnoses were cardiovascular disease, nicotine abuse, type II diabetes, and hypercholesterol. (Tr. 465-66). Dr.

6

Williams also reported that Plaintiff's ability to sit was not impaired, that he was able to stand/walk for less than 1 hour without interruption, and that Plaintiff was unemployable. *Id*. In a contemporaneous clinical note, Dr. Williams noted that at an earlier date, she had filled out a form opinion that Plaintiff was employable, but that upon interviewing Plaintiff, she felt that he was not able to work. (Tr. 457).

Plaintiff was hospitalized in October, 2004, for treatment of a bleeding duodenal ulcer. (Tr. 316-44). Subsequently, Plaintiff suffered an acute cardiac experience and was hospitalized October 31-November 14, 2004, at which time he underwent a triple coronary artery bypass surgical procedure. *Id.* Plaintiff did well post-operatively and was discharged. *Id.* Surgeon Dr. Greer noted that Plaintiff continued to do well several months after the surgery. (Tr. 371).

Plaintiff participated in physical therapy during the period October 7, 2005, through January 18, 2006, for adhesive capsulitis of his left shoulder. (Tr. 377-85; 482-507). At the time Plaintiff completed that course of therapy, if was noted that Plaintiff's potential was good and that he had met most of the goals of therapy. *Id.*

Plaintiff was hospitalized January 20-21, 2006, for implantation of an internal cardiac defibrillator. (Tr. 508-11). At the time of Plaintiff's admission, Dr. Bulow noted that Plaintiff had a documented left ventricular ejection fraction of 24% and a history of bypass surgery. *Id.* Plaintiff tolerated the procedure well and was discharged. *Id.*

Treating physician Dr. Schoen from the Cassano Health Center reported on March 6, 2006, that Plaintiff was able to stand/walk for ½ to 2 hours in an 8-hour day, sit for 4 ½ to 6 hours in an 8 hour day, alternate positions for 2 ½ to 4 hours in an 8-hour day, and that he was not capable of performing either light or sedentary work. (Tr. 512-17). Dr. Schoen also reported that Plaintiff

7

was not impaired in many abilities to perform work-related mental activities while he was moderately to moderately severely impaired in others. *Id.* Dr. Schoen identified Plaintiff's diagnoses as cardiomyopathy, type II diabetes, hypertension, adhesive capsulitis, and elevated cholesterol and Dr. Schoen opined that Plaintiff's prognosis was guarded. *Id.*

In his Statement of Specific Errors, Plaintiff alleges that the Commissioner erred by failing to give controlling weight to Drs. Schoen's and Williams' opinions and by failing to properly evaluate his credibility. (Doc. 7).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

8

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Dr. Schoen's and Dr. Williams' opinions, Judge Padilla determined that Dr. Schoen's opinion was internally inconsistent and that both Dr. Schoen's and Dr. Williams' opinions were not supported by the objective medical evidence, and were inconsistent with the other evidence of record. (Tr. 25, 26).

Although Dr. Schoen reported in a physical capacities evaluation form dated March 6, 2006, that Plaintiff is not capable of performing light or sedentary work, he also reported that Plaintiff was able to able to stand/walk for ½ to 2 hours in an 8-hour day, sit for 4 ½ to 6 hours in

9

an 8 hour day, alternate positions for 2 ½ to 4 hours in an 8-hour day, findings that are internally inconsistent. Further, Dr. Schoen failed to provide any objective findings to support his conclusion that Plaintiff cannot perform light or even sedentary work. In addition, Dr. Schoen's clinical notes do not support his conclusions. Specifically, Dr. Schoen's notes contain few, if any, objective physical findings and are primarily recitations of Plaintiff's subjective complaints. *See, e.g.,* Tr. 453-54 (no abnormal findings indicated on check-list); 456-57 (no abnormal findings indicated on check-list); 459 (no abnormal findings indicated on check-list); 524 (no abnormal findings indicated on check-list).

Similarly, although Dr. Williams reported on September 13, 2004, that Plaintiff was unemployable, she provided absolutely no clinical findings to support her opinion. Indeed, as noted above, Dr. Williams' clinical notes indicate that she had previously completed the form indicating that Plaintiff was able to work but that after Plaintiff's complained about her report and she interviewed him, she determined that he was not able to work. It appears, then, that Dr. Williams based her opinion entirely on Plaintiff's subjective complaints and allegations rather than her own objective clinical findings.

Dr. Schoen's and Dr. Williams' opinions are also inconsistent with the findings and conclusions of the other treating physicians of record. For example, Dr. Bulow noted on April 13, 2005, that Plaintiff was "doing quite well", (Tr. 423), on July 13, 2005, Plaintiff reported to Dr. Bulow that he was "doing quite well", (Tr. 422). Further, Dr. Greer noted on Autust 31, 2005, that Plaintiff continued to do "quite well". (Tr. 371). In addition, both Dr. Schoen's and Dr. Williams' opinions are inconsistent with Dr. Danpoulos' findings and conclusions as well as with the reviewing physicians' opinions. *See*, Tr. 165-73; 222-27; 257).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Schoen's and Dr. Williams' opinions.

Plaintiff argues next that the Commissioner erred by failing to evaluate his credibility properly.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

In determining that Plaintiff's allegations were not entirely credible, Judge Padilla considered several factors. (Tr. 24-25). For example, Judge Padilla noted that Plaintiff's subjective complaints were not supported by the objective medical evidence. For the same reasons that the Court concluded that the Commissioner had an adequate basis for rejecting Drs. Schoen's and Williams' opinions, the Court concludes that the Commissioner did not err in this regard.

In addition, as did Judge Padilla, this Court notes that Plaintiff has apparently been able to manipulate his health care providers at least to the point of having them complete disability forms in the manner he (Plaintiff) wants them completed, to wit: to provide statements that he is disabled. *See,* Tr. 214-15; 257. Further, the transcript contains evidence that in spite of Plaintiff's allegations of total disability, he was working as a painter/drywaller in April, 2004, (Tr. 229), that,

11

in fact, his girlfriend reported that he had been falling "at work" and "fell off a scaffold". *Id.* In addition, the transcript indicates that Plaintiff bowled on Thursday nights during which time he "belt[ed] down 7-10 beers". *Id.*

Under these facts, the Commissioner did not err by finding that Plaintiff was not entirely credible.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 10, 2008.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).